# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

PAUL J. THEIS

        Plaintiff,

     v.                                      Case No. 05-C-752

CITY OF STURGEON BAY,
CITY OF STURGEON BAY POLICE
AND FIRE COMMISSION, and
DANIEL J. TRELKA,

        Defendant.

---

## DECISION AND ORDER

---

      This case arises under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654. Plaintiff Paul J. Theis claims that Defendants City of Sturgeon Bay, City of Sturgeon Bay Police and Fire Commission, and Sturgeon Bay Police Chief Daniel J. Trelka violated the FMLA by terminating his employment with the Sturgeon Bay Police Department in retaliation for his exercising of FMLA rights. The defendants claim Theis was fired for insubordination after he twice refused to comply with an order that he undergo a psychological evaluation to determine whether he was fit for duty. Presently before the court is the defendants' motion for summary judgment. For the following reasons, the motion will be granted.

## BACKGROUND[1]

      Theis was hired by the Sturgeon Bay Police Department as a full-time police officer on March 15, 1999. On September 7, 2004, Theis notified the City that he was scheduled to have back

---

[1]The facts are set forth in the light most favorable to the Plaintiff, the non-moving party. *See Tincher v. Wal-Mart Stores*, 118 F.3d 1125, 1126 n. 1 (7th Cir. 1997).

surgery on September 15, 2004, and would need to take off work until November 10, 2004. Theis planned to use his remaining vacation, sick days and comp time for part of the time he would need and unpaid FMLA leave for the balance. Although Theis claims that Chief Trelka was "extremely upset" over Theis' request because of the extra overtime that would be needed to accommodate it and the impact it would have on the budget, the City's Administrative Services Director reviewed and approved his request without question.

Shortly before this time, Chief Trelka had become concerned over Theis' mental and emotional health and his fitness for office. Theis apparently had significant health problems, and during the summer of 2004, Chief Trelka, who had served with Theis for five-and-a-half years, had noticed a number of changes in his behavior. In addition, several other officers had expressed concern over Theis' psychological condition and his ability to safely perform his duties as a police officer.[2] Chief Trelka also discussed his concerns with Deanna Theis, Theis' wife, on September 15. Deanna followed up their conversation with a letter in which she acknowledged that "how Paul is handling his job these days is a big question and concern" and described how his health problems were causing him anxiety and affecting his personal and professional life. (Trelka Aff., Ex. H.)

On September 21, Chief Trelka went to Theis' home and advised him of his concerns about his mental health and his intent to order him to undergo a fitness-for-duty psychological evaluation. Theis, who was recovering from his surgery, denied that he had any problem and stated that the

---

[2]Theis disputes these facts, claiming they constitute argument and not factual assertions. Theis is mistaken. Whether Chief Trelka and other officers actually had such concerns is a fact that is established by the evidentiary materials submitted by the defendants. *See* Trelka Aff. ¶¶ 18-22, 36, Ex. K. Of course, the fact that Chief Trelka and other officers were concerned about Theis' mental health does not mean that he actually had a serious problem that affected his ability to carry out his duties. But it does provide a reasonable basis for Chief Trelka to order Theis to undergo a psychological evaluation.

Chief's request for an examination was unwarranted.  On September 24, Chief Trelka served Theis with a written order directed him to attend a psychological fitness for duty examination with Dr. William Laakso on September 29, 2004, or else face disciplinary action "up to and including termination." (Trelka Aff., Ex. I.)  The order set forth Chief Trelka's reasons for requesting the evaluation and stated "[w]e are not asking Dr. Laakso to provide us any confidential, medical or psychological information, but merely asking for an assessment of your fitness to perform your job duties without risk to the health and safety to yourself, fellow employees, or the general public." (*Id.*)

Theis initially informed Chief Trelka he would not comply with the order, but several days later offered to comply, provided there would be no disciplinary action for his initial refusal.  Chief Trelka told Theis that even if he now complied with the order, he was still proceeding with a formal disciplinary action for insubordination.  Theis did not comply.  Following an internal investigation of the matter, Chief Trelka charged Theis with insubordination before the Police and Fire Commission (PFC) and requesting that he be terminated.  The PFC held a hearing on November 19, and issued its decision on December 1, 2004, in which it rejected Chief Trelka's termination request, but instead ordered Theis suspended without pay for two weeks.  The PFC also ordered Theis to undergo a psychological fitness-for-duty evaluation.

Based on the PFC's decision, Chief Trelka scheduled an evaluation of Theis with Dr. James Fico for December 7(Dr. Laakso was unavailable) and ordered Theis to attend.  The order again warned Theis that if he failed to attend he would face disciplinary proceedings up to and including termination. (Trelka Aff., Ex. M.)  Theis cancelled this appointment, however, because he thought Dr. Fico might not be objective, and arranged for an evaluation to be performed by a doctor of his own choosing.  On January 3, 2005, the PFC issued a supplemental decision in which it explained

3

to Theis that he was to undergo the evaluation by the doctor selected by Chief Trelka.  Shortly after the supplemental decision, Chief Trelka for the second time ordered Mr. Theis to see Dr. Fico on January 5, 2005.  When Theis again refused to comply, Chief Trelka  again charged him with insubordination.  A hearing before the PFC was held on February 14, 2005, and in a decision issued on March 4, 2006, the PFC ordered his employment terminated for insubordination, failure to perform his duties as ordered, and failure to obey the rules of the Department.  (Moeller Aff., Ex. F.)  Claiming that the real reason for his termination was his exercise of his FMLA rights, Theis commenced this action.

## ANALYSIS

Under the Federal Rules of Civil Procedure, summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  With these principles in mind, I now turn to the specific claims before me.

4

An employee is entitled to take FMLA leave without fear of the leave counting as a negative factor in future employment actions. *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999) (citing 29 C.F.R. § 825.220(c)). At the same time, however, when an employee takes FMLA leave, an absolute right to return to work is not created. An employee is not entitled to any benefits that the employee would not have been entitled to if no leave was taken. *Ogborn v. United Food and Commercial Workers Union, Local No. 881*, 305 F.3d 763, 768 (7th Cir. 2002) (citations omitted). "Employers may fire employees for poor performance if they would have fired them for their performance regardless of their having taken leave." *Id.* (citing *Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 805 (7th Cir. 2001); *Hatchett v. Philander Smith Coll.*, 251 F.3d 670, 677 (8th Cir. 2001). When an employer takes adverse action against an employee exercising FMLA rights, the question of the employer's intent for taking such action may be questioned. *Id.*

Like plaintiffs who sue under Title VII of the Civil Rights Act of 1964 or the Americans with Disabilities Act, FMLA plaintiffs may prove discrimination directly or indirectly. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). Under the direct method, the plaintiff must present either direct or circumstantial evidence of discriminatory intent. *Id.* Under the indirect method the courts employ the burden shifting test established by *McDonnell Douglas Corp v. Green,* 411 U.S. 792, 800-06 (1973). *King*, 166 F.3d at 891-92. The plaintiff must establish a prima facie case by showing that:

> after [engaging in protected conduct] only he, and not any similarly situated employee who did not [engage in protected conduct], was subjected to an adverse employment action even though he was performing his job in a satisfactory manner. If the defendant presents no evidence in response, the plaintiff is entitled to summary judgment. If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, he is entitled to summary judgment. Otherwise there must be a trial.

5

*Id.* (internal citations omitted). If a prima facie case is established by the plaintiff, the burden shifts to the employer to "articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* If the employer meets its burden, the prima facie case is rebutted and the plaintiff has the opportunity to show the reason offered by the employer was not the real reason. *Id.*

Under this burden shifting test, the plaintiff may submit evidence that the employer's reasons for the adverse employment action are just a pretext for discrimination. *Id.* The plaintiff has the burden of providing "significantly probative admissible evidence that the employer's articulated reason for the discharge was a pretext for discrimination" and that the discrimination was intentional, based on the protected action. *Id.* at 892-93. However, the reason given by the employer must be false, and discrimination as the real reason must be shown to prove the employer's proffered reason was a "pretext for discrimination." *Id.* at 892 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 592, 515 (1993)).

**A. Direct Method**

Theis contends that Chief Trelka was motivated to terminate his employment because he was upset over Theis' request for FMLA leave and the potential budgetary problems for his department it created. Theis notes that he had ongoing health issues, so future FMLA leave was foreseeable. The only evidence Theis offers to support his contention, however, is the timing of his request for FMLA leave in relation to his termination, and his claim that Chief Trelka was extremely upset over his request for leave during two conversations he had with the Chief on September 6 and September 22.

Under the direct method, suspicious timing of events can be considered a type of circumstantial evidence. *Buie*, 366 F.3d at 506 (citing *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)). But temporal proximity of events, by itself, does not normally create an issue

6

of material fact. *Id.* Rarely will the mere proximity between the exercise of FMLA leave, and the alleged retaliatory action be sufficient, by itself, to create a triable issue. *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 644 (7th Cir. 2002).

Theis' claim that Chief Trelka was upset about his request for leave also fails to support the retaliation claim. The transcript of the September 6, 2004, telephone conversion with Chief Trelka, which Theis apparently recorded surreptitiously, does not support his claim that the Chief reacted angrily to his request for leave. The transcript reveals the Chief advising Theis to look at the FMLA and his union contract to review his options for the necessary time off, and acknowledging that the ultimate decision lay with the City. (Theis Aff., Ex. at 8.) Although Chief Trelka did say that FMLA is not automatic and expressed concern over the impact of Theis' leave on fellow officers and the operation of his department, he did not discourage Theis from taking the time off nor did he threaten retaliation if Theis did take FMLA leave. Thus, Theis' characterization of the Chiefs' reaction to his request is not supported by the recording or transcript. It is also significant that Chief Trelka was not the ultimate decision-maker in the case. It was the PFC that ultimately decided that Theis' conduct warranted termination, and Theis has offered no evidence that any of its members were upset over his request for leave.

Theis alleges that the written order to receive a psychological fitness for duty evaluation was unlawful. But he provides no evidence as to why it was unlawful and offers only personal reasons as to why he should not have been ordered to undergo an evaluation. (PPFOF ¶¶ 53-56.) Ensuring that a police officer is mentally fit for duty is a legitimate concern in any police department. *See Redmond v. City of Overland Park*, 672 F. Supp. 473, 483 (D. Kan. 1987) (holding that a police department was entitled to determine an officer's mental fitness for duty). As the Eleventh Circuit noted in a related context,

In any case where a police department reasonably perceives an officer to be even mildly paranoid, hostile, or oppositional, a fitness for duty examination is job related and consistent with business necessity. Police departments place armed officers in positions where they can do tremendous harm if they act irrationally. Contrary to Watson's contention, the ADA does not, indeed cannot, require a police department to forgo a fitness for duty examination to wait until a perceived threat becomes real or questionable behavior results in injuries.

*Watson v. City of Miami Beach*, 177 F.3d 932, 935 (11th Cir. 1999).

Even if Theis believed the order from Chief Trelka was unlawful, the police department's manual of rules provides the appropriate way to handle and appeal an unlawful or unjust order. (Trelka Aff., Ex. C §§ 314.57-63.) Theis did not follow this procedure and refused to follow the order. Chief Trelka reasonably viewed this as insubordination and initiated an internal investigation. Although Theis, fearing against an adverse employment action, offered to attend the evaluation on the condition that no adverse employment action be taken, the fact that Chief Trelka did not accept the offer does not support a finding of discriminatory animus. In any event, Theis failed to comply with the order.

### B. Indirect Method

Theis also fails to establish a prima facie case under the indirect method of proof. He fails to establish even the first prong of the indirect method since there is no evidence that any similarly situated employees, i.e., employees who disobeyed direct orders, were treated differently. *See Buie*, 366 F.3d at 508; *Stone*, 281 F.3d at 644. For the same reason, Theis failed to establish the second prong–that he was performing his job satisfactorily. *See Buie*, 366 F.3d at 508; *Stone*, 281 F.3d at 644. Refusing to obey a lawful order of the Chief is not satisfactory performance. The defendants contend that Theis was terminated for his insubordination. Theis admits to refusing to follow the Chief's order, which was a violation of his job's duties. (PPFOF ¶¶ 108, 121, 127.) The FMLA provides no license for insubordination. *See Ogborn*, 305 F.3d at 768.

8

Even if the court assumed that a prima facie case was made, Theis still fails to show that the actual reason for his termination was his exercise of rights under the FMLA. *See Buie*, 366 F.3d at 507-09. To show that the reasons for an adverse employment action were a pretext for discrimination, the plaintiff must prove "that the reasons [are] false, and that discrimination [is] the real reason." *King*, 166 F.3d at 893 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515). The defendants have "articulated a legitimate, non-discriminatory reason for the adverse employment action." *King*, 166 F.3d at 892. Again, Theis attempts to rebut these legitimate reasons by citing the proximity of his termination to his FMLA leave and his own views about Chief Trelka's motives. But as stated above, no evidence supports the speculation about Chief Trelka's motive, and a reasonable jury could not find in Theis' favor on timing alone. *See Buie*, 366 F.3d at 509.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is **GRANTED** and the case is ordered dismissed . The clerk of court shall enter judgment accordingly.

**SO ORDERED.**

Dated this ___14th___ day of August, 2006.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

9